**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DWIGHT FIELDS,

    Plaintiff,
v.                                    CASE NO. 19-11411

ANDREW SAUL,              DISTRICT JUDGE NANCY G. EDMUNDS
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [12] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [13]**

Plaintiff Dwight Fields appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI). The matter is currently before this Court on cross-motions for summary judgment.[1] (ECF nos. 12, 13.)

**A.    Procedural History**

Plaintiff filed an application for a period of disability, DIB and SSI alleging an onset date for disability as of August 8, 2013. (Transcript 12, ECF no. 7.) Plaintiff's claim was denied at the initial administrative stages on April 29, 2014. (Tr. 90-108, 398.) On April 16, 2015, Plaintiff appeared at a hearing before an administrative law judge ("ALJ"), who considered the application for benefits *de novo*, and issued a

---

[1]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

decision finding that the Plaintiff was not disabled through the date of the May 15, 2015 decision. (Tr. 12-21.) Plaintiff requested review of that decision from the Appeals Council, which denied Plaintiff's request on June 7, 2016. (Tr. 1-6.) The ALJ's decision was then appealed to this Court (before a different judge), which remanded the case for further proceedings. (Tr. 523-31.) On remand, Plaintiff appeared at another hearing before an ALJ on November 21, 2017, where the ALJ also considered subsequent claims filed on July 6, 2015, and consolidated with the remanded claims. (Tr. 398, 535.) In a decision dated January 30, 2018, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from August 8, 2013, through the date of the ALJ's decision. (Tr. 398-414.) Plaintiff requested Appeals Council review of this decision. (Tr. 387.)

The ALJ's decision became the final decision of the Commissioner on March 12, 2019, when the Appeals Council denied Plaintiff's request for review. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004); (tr. 387-90). On May 13, 2019, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (ECF no. 1.)

**B.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of*

*Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility*. See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C. Governing Law**

Disability for purposes of DIB and SSI is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

See 20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional

capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

**D. ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since August 8, 2013. (Tr. 401.) At step two, the ALJ found that Plaintiff had one "severe" impairment within the meaning of the Social Security regulations: human immunodeficiency virus (HIV) infection. (Tr. 401.) At step three, the ALJ found no evidence that Plaintiff's impairment or combination of impairments met or equaled one of the listings in the regulations. (Tr. 406.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform work at the sedentary[2] exertional level with the following limitations: Only occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; and no working at unprotected heights. (Tr. 406.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a customer service clerk. (Tr. 412.)

The ALJ found that on the alleged onset date of disability, Plaintiff was 55 years old, defined in the Regulations as an individual "of advanced age" who subsequently changed category to "closely approaching retirement age," has at least a high school

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and only occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

education and is able to communicate in English. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e), 404.1564 and 416.964; (Tr. 413). The ALJ relied on the vocational expert's hearing testimony to find that Plaintiff had acquired the following work skills from his past relevant work: dealing with the public, documentation, clerical, filing, operating office equipment, organization, time management, independent thinking, making judgments and decisions, and reading, writing and math skills. (Tr. 413.)

In the alternative, at step five the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, and therefore he was not suffering from a disability under the Social Security Act from August 8, 2013 though the January 30, 2018 date of the ALJ's decision. (Tr. 414-15.)

**E.   Administrative Record**

Plaintiff was 55 years old on the alleged onset date. (Tr. 74). A complete review of the record shows that Plaintiff has a history of diagnosis and treatment of HIV and hypertension, as well as adjustment disorder with mixed anxiety and depressed mood. (Tr. 240-42, 266.) He also has a history of left inguinal hernia, repaired in 2011, right foot fracture in 2015, plantar fasciitis, latent tuberculosis and allergic rhinitis. (Tr. 244-45, 881, 878, 885, 931 ("no radiographic evidence of tuberculosis"), 933.)

Plaintiff alleges error based on the ALJ's consideration of his mental impairments, specifically, depression and anxiety, and their resultant limitations. (Pl.'s Mot. Summ. J. 16, 19.) Therefore, despite fully reviewing the records, the Court will focus this summary on the medical records relevant to those arguments.

Plaintiff sought mental health treatment through Health Emergency Lifeline Program (HELP) from 2012 through 2014. (Tr. 367-86.) An unsigned psychosocial assessment by Amy Kudlinski, LMSW, dated January 30, 2014, shows diagnoses of cognitive disorder and adjustment disorder with mixed anxiety and depressed mood. (Tr. 373.)

Records show that Plaintiff was referred to a social worker at Henry Ford Health System as early as 2010 for complaints of depression and stress, primarily related to finances. (Tr. 243.) A span of records from Henry Ford Behavioral Health Services from 2014 forward, show that Plaintiff underwent psychotherapy and medication management. December 26, 2014 progress notes by Andrew Truccone, D.O., show that Plaintiff was diagnosed with adjustment disorder. (Tr. 341.) March 3, 2015 progress notes by Mary Meier, LLP, include Plaintiff's report of feeling anxious and depressed, and having difficulty sleeping and concentrating. (Tr. 342.) The treatment provider gave a primary diagnosis of adjustment disorder with mixed anxiety and depressed mood. (Tr. 344.)

Dr. Truccone completed an RFC dated March 19, 2015, in which he indicated that Plaintiff had participated in the Behavioral Health Service program since December 2014. (Tr. 346-50; *see also* tr. 862, 865-68.) Dr. Truccone reported a diagnosis of adjustment disorder and assigned a GAF of 55. (Tr. 347.) He reported that Plaintiff had a positive response to psychotherapy, yet also noted decreased energy and altered concentration, with an overall "fair" prognosis. (Tr. 347-48.) He opined that Plaintiff was seriously limited but not precluded in the ability to "maintain

attention for two hour segment," "complete a normal workday and workweek without interruptions from psychologically based symptoms," "perform at a consistent pace without an unreasonable number and length of rest periods," "deal with normal work stress," and "respond appropriately to changes in a routine work setting." (Tr. 349-50.) Dr. Truccone concluded that Plaintiff's impairments or treatments could be expected to cause him to be absent from work about three days per month. (Tr. 350.)

The Henry Ford Health System records from 2015 through 2016 note, among other symptoms, Plaintiff's complaints of difficulty concentrating. (Tr. 341, 343, 790, 801, 812, 823, 834, 844, 880, 916; *see also* tr. 991 (10/3/16 reports of worsening depression).) As discussed further below, the records also show that on examination, attention and concentration, as well as recent and remote memory were normal. (*E.g.*, 12/26/14 at tr. 340; 3/3/15 at tr. 343; 3/18/15 at tr. 866; 6/21/16 at tr. 848-50.) Plaintiff was reportedly "most distressed by his lack of income, limited opportunity for employment and resulting dependence on his elderly parents." (Tr. 343; *see also* tr. 891.)

The Henry Ford Health System records also show that at the end of 2014, Plaintiff reported taking classes at a local university and reported that he liked them but they were challenging. (Tr. 338.) In March 2015, he reported having dropped classes because he was having trouble concentrating. (Tr. 855.) Later that month he reported that the university classes were going well. (Tr. 865.) In December 2016, while noting that Plaintiff's conditions was "overall . . . improving at an expected pace," Plaintiff's

9

doctor increased his Lexapro dosage. (Tr. 993-94 (12/19/16 progress notes by M.D.), 1047.)

On April 16, 2014, Plaintiff underwent a consultative mental status examination with John J. Jeter, MA, LLP, LMSW, and Hugh Bray, Ph.D., LP. (Tr. 279-82.) They diagnosed depression and opined that Plaintiff had no difficulty in the work-related functional categories set forth in the evaluation. (Tr. 279-82.) "No" difficulties were listed with respect to comprehending and carrying out simple directions, performing repetitive, routine, simple tasks, comprehending complex tasks, getting along appropriately with supervisors, creating and maintaining good working relationships, and getting along appropriately with the public. (Tr. 281.)

An April 29, 2014 consultative evaluator, Jigna Shah, M.D., noted a diagnosis of affective disorders, and only mild restriction of activities of daily living and maintaining concentration, persistence and pace, and no difficulties in maintaining social functioning with no episodes of decompensation of extended duration. (Tr. 79-80.)

On October 26, 2016, Plaintiff underwent a consultative mental status examination with Hermann J. Daldin, Ph.D. (Tr. 950- 52.) Plaintiff's diagnosis was listed as "adjustment disorder managed with medication." (Tr. 952.) The examiner's medical source statement included the following: "There are no psychiatric symptoms that appear to be interfering with his ability to appropriately interact with others. His working memory is intact and he should be able to follow two and three step directions to do work related activities at a sustained pace." (Tr. 952.)

Plaintiff's testimony at the November 21, 2017 administrative hearing included his reports that he has constant and chronic fatigue, one of the side effects of his medications is difficulty concentrating, and that he has difficulty with focus and concentration. (Tr. 431-32, 444-448.) Further statements by Plaintiff are included in the analysis below.

At the hearing, the VE testified and classified Plaintiff's past relevant work as a customer service representative, DOT code 239.362-014, skilled (SVP 5) and sedentary in exertion as both generally performed and actually performed by Plaintiff. (Tr. 412, 459.) The ALJ asked the vocational expert ("VE") to consider an individual with a sedentary exertional level who could not climb ladders, ropes or scaffolds, could only occasionally climb ramps or stairs, and "would have no unprotected heights." (Tr. 464.) The VE testified that such an individual could perform Plaintiff's past work either as actually or generally performed. (Tr. 464.) The VE also identified other jobs to which the claimant's skills would transfer within this sedentary hypothetical question. (Tr. 464.) Those are the jobs identified in the ALJ's decision and are not directly at issue in Plaintiff's motion. (Tr. 414, 464-65.)

**F. Analysis**

Plaintiff contends that the ALJ erred at step two by failing to include depression and anxiety as severe impairments and, as a result, at step four by failing to include limitations related to either impairment in the residual functional capacity assessment. (Pl.'s Mot. Summ. J. 16-20.)

### 1. Whether The ALJ's Finding at Step Two That Plaintiff's Depression And Anxiety Are Not Severe Impairments Is Supported By Substantial Evidence

Plaintiff argues that the ALJ erred at step two when she failed to find that depression and anxiety were severe impairments. A "severe" impairment at step two is "one that affects an individual's ability to perform basic work-related activities for an adult." SSR 16-3p; 20 C.F.R. §§ 404.1520(c), § 416.920(c). Basic work activities "mean the abilities and aptitudes necessary to do most jobs," including, with relevance to mental abilities: "[u]nderstanding, carrying out, and remembering simple instructions," "use of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1522(b), 416.922(b). The Sixth Circuit construes the step two severity regulation as a *de minimis* hurdle. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* at 862.

In support of his argument, Plaintiff points out that he received mental health treatment for over two years, during which he "consistently experienced significant symptoms of depression and anxiety including anhedonia, difficulty sleeping, decreased energy, difficulty concentrating, and restlessness." (Pl.'s Mot. Summ. J. 17.) He also points out that his Lexapro dosage was increased in December 2016 and concludes that "[i]t does not follow that when someone is (sic) consistent mental health

treatment along with having significant symptoms and increased dosage in medication that their depression and anxiety is not a severe impairment." (Pl.'s Mot. Summ. J. 17-18.)

In considering Plaintiff's impairments at step two, including the mental impairments, the ALJ's decision shows that she considered Plaintiff's allegations of symptoms and the medical records to determine whether he had medically determinable impairments. In considering the severity of the mental impairments, the ALJ properly considered Plaintiff's limitations in four broad functional areas and found that he had: (1) mild limitations in understanding, remembering or applying information; (2) no limitation in interacting with others; (3) mild limitations in concentrating, persisting or maintaining pace; and (4) no limitations in adapting or managing himself. (Tr. 405-06); 20 C.F.R. §§ 404.1520a, 416.920a.

The ALJ's decision shows that she considered the depression and anxiety symptoms raised by Plaintiff. For example, the ALJ noted that both Plaintiff and his therapist, a licensed master social worker, reported that he had problems with concentration. (Tr. 405.) His therapist completed a Third Party Function Report dated February 25, 2014, in which she noted that his conditions affect memory, completing tasks, concentration, understanding and following instructions. (Tr. 213, 405.) The ALJ found that Plaintiff has "mild" limitation in the functional area of concentrating, persisting or maintaining pace, and she pointed out multiple treatment records and consultative examinations showing that on examination, Plaintiff's attention and concentration were normal. (Tr. 405, 340, 866, 951, 984). At the April 2014 consultative

mental status examination, Plaintiff was able to engage in the concentration tasks, including spelling "WORLD" backwards, and accurately subtract serial 3's from 10 to 76. (TR. 280-81, 405.)

Despite Plaintiff's complaints of additional symptoms such as anhedonia and difficulty sleeping, decreased energy and restlessness, he does not point to other evidence showing resultant limitations relating to work activities, such as concentration, discussed above. Plaintiff's self-reported symptoms in the medical records are not opinions regarding Plaintiff's limitations or restrictions. *See McCready v. Comm'r of Soc. Sec.*, No. 10-cv-13893, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2, 2012).

The ALJ also pointed out notes of Plaintiff's report in early March 2015 that he had to drop his university classes due to problems concentrating, yet later that month reported that the university classes were going well. (Tr. 406, 855, 865.) At the later appointment, Plaintiff also reported that his concentration was mildly decreased. (Tr. 865.) The ALJ's finding that Plaintiff has no more than mild limitations in this functional area are supported by substantial evidence.

The same is true of the ALJ's findings in the other three functional areas. With respect to mild limitations in understanding, remembering, or applying information, Plaintiff's therapist's February 2014 Third Party Function Report also noted effects on memory, completing tasks, and understanding and following instructions. (Tr. 213, 405.) As the ALJ pointed out, Plaintiff did not identify problems with memory, understanding or following instructions in his own function reports, and mental health records regularly showed "normal" memory on examination. (Tr. 221, 693, 951, 984.)

Following the October 26, 2016 consultative mental status examination, Dr. Daldin concluded that Plaintiff's "working memory is intact . . . ." (Tr. 952.) The ALJ's findings in this area are also supported by substantial evidence.

Similarly, the ALJ's findings that Plaintiff has no limitations in the final two functional areas, interacting with others and adapting and managing oneself, are supported by substantial evidence. In each category, the ALJ cited specific evidence of Plaintiff's ability to interact with others and adapt or manage himself, often based on his own testimony of such activities. (Tr. 405, 406.) For example, in his August 2016 function report, Plaintiff noted that since he began living with his parents again, who both have early onset dementia, he has started having issues getting along with others, yet neither he nor his therapist identified "getting along with others" as one of the abilities on which his conditions have an effect. (Tr. 213, 221, 693.) With respect to adapting or managing himself, the ALJ correctly pointed out Plaintiff's history of living with and assisting his elderly parents, and his ability to live on his own, as well as Plaintiff's self-reported activities of daily living. (Tr. 406, 219, 963.)

Plaintiff also argues that the fact that his Lexapro dosage was increased in December 2016 shows that his depression and anxiety are severe impairments. In December 2014, Dr. Truccone gave Plaintiff information on Lexapro as a potential medication to try if his concerns and symptoms persisted "after psychotherapy and sleep optimization." (Tr. 341.) At that time that he presented with altered mood in the context of his chronic medical comorbidities, as well as recent changes including moving back in with his parents and resuming college courses. (Tr. 340.) In March

2015, Dr. Truccone noted that Plaintiff's condition was slowly improving and they discussed Lexapro again, yet Plaintiff wanted to abstain due to concerns about side effects. (Tr. 728.) He started Lexapro 10 mg. daily in approximately November 2016. (Tr. 957.) At a December 19, 2016 appointment, Plaintiff reported improvement in his symptoms, including feeling less depressed and having more energy and motivation. (Tr. 991, 406.) At the same appointment, the doctor noted that Plaintiff's "condition is improving at an expected pace" and recommended increasing the dose of Lexapro to 20 mg. daily, as well as recommending out-patient therapy. (Tr. 993.) The ALJ considered Plaintiff's Lexapro medication in her decision and properly noted that Plaintiff was improving with it. (Tr. 406.)

With respect to the four areas of mental functioning, the Social Security Regulations contemplate that if the degrees of limitations in the functional areas are rated as "none" or "mild", it is generally concluded that the impairment "is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation" in the ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Plaintiff has not shown that the mental impairment symptoms he reports result in more than a minimal limitation in the ability to do these basic work activities. The ALJ's finding at step two that Plaintiff does not have a severe mental impairment is supported by substantial evidence. The decision also shows that the ALJ continued to consider records and testimony related to Plaintiff's mental impairments, symptoms and signs throughout the remainder of the steps.

Plaintiff argues that the ALJ's decision is internally inconsistent where she gave very little weight to the opinions of medical consultants from the first of Plaintiff's claims, which was remanded by the District Court, and gave great weight to the opinions of Mr. Jeter and Dr. Bray, who opined that Plaintiff had no significant mental limitations. (Pl.'s Mot. Summ. J. 18.) Plaintiff argues that the "ALJ cannot discredit one opinion that was found to be unsupported by substantial evidence and give great weight to another which was found to be unsupported by substantial evidence." (Pl.'s Mot. Summ. J. 18.) The Court agrees with Defendant that this argument is opaque and undeveloped.[3] The ALJ gave great weight to Mr. Jeter and Dr. Bray's April 16, 2014 opinion that Plaintiff had no significant mental limitations, for the reason that it was based on an examination and was consistent with the record as a whole. (Tr. 279-82.) The ALJ also pointed out where the April 2014 examination was consistent with the October 2016 consultative examination with respect to memory tasks. (Tr. 405, 281, 951.) To the extent the ALJ discounted the some of the October 2016 consultive examination opinion, specifically the opinion that Plaintiff is able to "follow two or three step directions to do work related activities at a sustained pace," on the basis of normal memory and concentration, this is supported by exam notes from treatment over

---

[3]There is no argument that the Commissioner and ALJ did not comply with the District Court's March 30, 2017 order remanding this case. Further, the opinions at issue in Plaintiff's current motion were not at issue in the prior remand. (Tr. 523-31.) The Appeals Council vacated the prior ALJ decision, remanded the case for proceedings consistent with the District Court's 2017 opinion and order, and ordered the ALJ to consolidate Plaintiff's subsequent claims with the remanded claim and issue a new decision. (Tr. 535.)

17

several years, which show normal results. (Tr. 411, 952.) The mental status examinations from the relevant time period are consistent with the ALJ's conclusions.

### 2. Whether the Residual Functional Capacity Assessment is Supported By Substantial Evidence When It Does Not Include Limitations Related To Anxiety and Depression

Plaintiff argues that the ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence and therefore, the findings at steps four and five are in error. Specifically, Plaintiff argues that the "limitations that result because of . . . Plaintiff's depression and anxiety . . . include an inability to concentrate, difficulty understanding directions, and an inability to perform work activity on a sustained basis." Plaintiff has not otherwise identified specific evidence that requires a more restrictive RFC.  *See generally Jordan v. Comm'r*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating the need for a more restrictive RFC).

The ALJ addressed each of these limitations. With respect to the inability to concentrate, the examination notes in the treatment records consistently reported "normal" attention and concentration, as discussed above. (Tr. 405.) To the extent that Plaintiff reported dropping his college courses due to difficulty concentrating, just a short time later Dr. Truccone noted Plaintiff's report that they were going well. (Tr. 406.) With respect to difficulty understanding directions, Plaintiff's therapist indicated on the Third Party Function Report that Plaintiff's conditions affect "following instructions." (Tr. 213-14.) Plaintiff did not identify this as a difficulty on his own Adult Function Report; he reported that he is able to follow both written and spoken instructions "OK." (Tr.

221.) The ALJ noted that the therapist had identified as problems some areas which Plaintiff had not identified, and further noted where some of the therapist's opinions were inconsistent with objective signs on examination. (Tr. 405, 412.) Further, neither the April 2014 nor the October 2016 mental status examination reports noted limitations with following or understanding instructions. (Tr. 281-82, 952.)

With respect to Plaintiff's allegation that his depression and anxiety result in an "inability to perform work activity on a sustained basis," it is not clear which evidence Plaintiff relies upon for this limitation. To the extent that Dr. Truccone's March 2015 Mental Residual Functional Capacity questionnaire notes that Plaintiff is "seriously limited, but not precluded" in completing a normal workday or workweek without interruption from symptoms, or performing at a consistent pace without unreasonable number or length of breaks, it is noted as well that these functions are "not precluded in all circumstances." (Tr. 349.) The ALJ addressed Dr. Truccone's opinion in detail and provided reasons for giving it little weight. (Tr. 411.) The ALJ's decision that Plaintiff's RFC did not require limitations related to his mental impairments is supported by substantial evidence.

## G.   Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law and it is supported by substantial evidence. For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF no.12) is DENIED, that of Defendant (ECF no.

13) is GRANTED and, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

SO ORDERED.

                                           s/Nancy G. Edmunds
                                           Nancy G. Edmunds
                                           United States District Judge

Dated: September 30, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2020, by electronic and/or ordinary mail.

                                           s/Lisa Bartlett
                                           Case Manager